IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Katrina Young-Schonyers, ) | C/A No. 0:13-2951-JMC-PJG |
|         Plaintiff, ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner ) of Social Security, ) | |
|         Defendant. ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Katrina Young-Schonyers, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that this matter should be affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

PJG

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)   whether the claimant can perform her past relevant work; and

(5)   whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In February 2010, Young-Schonyers applied for DIB and SSI, alleging disability beginning January 10, 2008. Young-Schonyers's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on May 29, 2012, at which Young-Schonyers, who was represented by Brian Dumas, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on July 11, 2012 denying benefits and concluding that Young-Schonyers was not disabled. (Tr. 20-32.)

Young-Schonyers was born in 1965 and was forty-two years old at the time of her alleged disability onset date. (Tr. 134.) She has a high school education and past relevant work experience as a fast food worker and a housekeeper. (Tr. 161-62.) Young-Schonyers alleged disability due to back, leg, and arm injuries; depression; and anxiety. (Tr. 160.)

In applying the five-step sequential process, the ALJ found that Young-Schonyers had not engaged in substantial gainful activity since January 10, 2008—her alleged onset date. The ALJ also determined that Young-Schonyers's osteoarthritis of the right shoulder status post debridement surgery, small joint effusion of the right knee, degenerative disc disease of the lumbar spine, migraine headaches, obesity, affective disorder, and generalized anxiety disorder were severe impairments. However, the ALJ found that Young-Schonyers did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Young-Schonyers retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no operation of motorized equipment and only occasional pushing or pulling with her left leg. She can occasionally stoop, crouch, and climb ramps and stairs; however, she can never kneel, crawl, or climb ladders, ropes, or scaffolds. She can occasionally reach overhead with her right ([dominant]) arm; however, she must



> avoid work around heights and dangerous machinery. She is able to perform routine, simple work that permits her to avoid large crowds in the workplace. She should not have to serve the public as customers.

(Tr. 25.) The ALJ found that Young-Schonyers was unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Young-Schonyers could perform. Therefore, the ALJ found that Young-Schonyers was not disabled from January 10, 2008 through the date of his decision.

Young-Schonyers appealed the ALJ's decision to the Appeals Council, which denied her request for review on September 30, 2013 making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



**ISSUES**

Young-Schonyers raises the following issues for this judicial review:

I. The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

II. The ALJ failed to properly assess medical opinion evidence[.]

III. The ALJ failed to properly evaluate credibility[.]

(Pl.'s Br., ECF No. 18.)

**DISCUSSION**

**A.     Residual Functional Capacity**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.

Young-Schonyers first appears to argue that the ALJ's residual functional capacity assessment does not comply with applicable law because it is too brief in light of the number of pages of medical records presented. Young-Schonyers also appears to argue that the ALJ erred in failing to discuss relevant medical evidence and in failing to sufficiently account for her physical and mental limitations in assessing her residual functional capacity. Upon review of the ALJ's decision and the record in this matter, the court disagrees. As an initial matter, an ALJ is not required to specifically cite or discuss every piece of evidence in his decision to satisfy the requirements of SSR 96-8p. See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ need



not specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection rendering the court unable to conclude that the ALJ considered the claimant's medical condition as a whole); Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Further, the court finds Young-Schonyers's argument that the ALJ erred in failing to explain how the residual functional assessment accounts for an individual with migraines unavailing. As acknowledged by Young-Schonyers, the ALJ specifically observed that Young-Schonyers complained of headaches and was diagnosed with tension headaches in late 2007, and the ALJ found migraine headaches to be a severe impairment. Moreover, although Young-Schonyers points to additional medical records showing reports of headache pain and diagnoses of migraine headaches, she has failed to demonstrate any additional limitations in the record that were not included in her residual functional capacity.

With regard to Young-Schonyers's lumbar spine problems, she observes that the ALJ acknowledged that an x-ray showed minimal anterolisthesis of L4 and L5, that an MRI revealed disc bulging with moderate stenosis at L4-5 with "tiny" central protrusion and associated annular tear at L3-4 with mild canal stenosis, and that Young-Schonyers underwent three epidural steroid injections; however, Young-Schonyers argues that the ALJ erred in stating that there was no evidence to limit her beyond light residual functional capacity. In support of this argument, Young-Schonyers points to records demonstrating numerous visits for lumbar back pain and records

acknowledging abnormal findings such as positive straight leg tests.[2] She also argues challenges any negative inference drawn by the ALJ in finding that her treatment had been conservative, arguing that although Young-Schonyers sought possible surgical treatment, no surgical option was available for her condition. The court finds that Young-Schonyers's reliance on selective medical evidence in the record does not render the ALJ's residual functional capacity assessment unsupported by substantial evidence. In this case, Young-Schonyers has failed to demonstrate that the ALJ failed to sufficiently reference the evidence supporting his conclusions with respect to Young-Schonyers's physical limitations. The court finds that the ALJ's discussion sufficiently demonstrates that he resolved the inconsistencies and ambiguities in the evidence, including Young-Schonyers's credibility and the opinion evidence. Furthermore, the ALJ's residual functional capacity assessment concerning Young-Schonyers's physical limitations is supported by an opinion from a state agency reviewer.[3]

With regard to her mental limitations, Young-Schonyers argues that although the ALJ acknowledged portions of a statement from Dr. Robert D. Phillips, a consultative examiner, the ALJ failed to acknowledge Dr. Phillips's statements that Young-Schonyers's symptoms "interfere with her general ability to focus on her work and they make it hard for her to react normally to work or social events" and that she "would be inconsistent in her performance and in her attendance." (Tr. 762.) However, the court observes that the ALJ relied on and gave great weight to the opinion of

---

[2] Young-Schonyers also appears to argue that the ALJ failed to acknowledge records demonstrating evidence of deep vein thrombosis in her left calf; however, those records appear to predate the study specifically mentioned by the ALJ which found no evidence of deep vein thrombosis.

[3] The only opinion evidence containing more restrictive physical limitations was from Young-Schonyers's physical therapist, which the ALJ found was entitled to little weight. Young-Schonyers has not challenged this finding.



state agency reviewer, Dr. Janet Boland, in determining Young-Schonyers's residual functional capacity. (Tr. 30.) Dr. Boland specifically considered and discussed Dr. Phillips's statements (Tr. 776) and, following a review of the record, found that Young-Schonyers

> may have difficulty sustaining her concentration and pace on complex tasks and social interaction with others. However, she should be able to attend to and perform simple tasks without special supervision. She can attend work regularly, but may miss an occasional day to her mental conditions. [S]he can relate appropriately to supervisors and co-workers, however she may be better suited for jobs that do not require regular work with the general public. She can make simple work-related decisions and occupations adjustments, adhere to basic standards for hygiene and behavior, protect herself from normal work-place safety hazards and use public transportation.

(Tr. 780.)

Based on the foregoing, Young-Schonyers has failed to demonstrate that the ALJ failed to comply with the requirements of SSR 96-8p.

**B.    Opinion Evidence**

Young-Schonyers next argues that the ALJ improperly discounted the opinions of Dr. Jeffrey Hall, Young-Schonyers's primary care physician. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or



contradict the opinion should also be considered. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

On May 30, 2012, Dr. Hall issued two opinions concerning Young-Schonyers, both indicating that his office (Palmetto Health Richland Family Center) has treated Young-Schonyers from 2004 to the present. (Tr. 1316-18, 1320-21.) In the first opinion, Dr. Hall checked boxes indicating that Young-Schonyers's depressive symptoms included: anhedonia or pervasive loss of interest in almost all activities; psychomotor agitation or retardation; and difficulty concentrating or thinking. (Tr. 1316). He indicated that Young-Schonyers experienced moderate restrictions of her activities of daily living; marked difficulties in maintaining social functioning; and unspecified

deficiencies in concentration, persistence, and pace.  (Id.)  Dr. Hall also indicated that repeated episodes of decompensation in work-like settings were "present." (Tr. 1316-17.)  Under the heading "Work Limitations Related to Psychiatric State," Dr. Hall checked various degrees of impairment in specific mental functions.  For example, he indicated that Young-Schonyers was markedly impaired in the ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual; and to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 1317-18.)  Dr. Hall commented that Young-Schonyers "has difficulty succeeding in many endeavors." (Tr. 1318.)  In the second opinion, Dr. Hall affirmed that Young-Schonyers suffers from chronic pain syndrome; has moderate pain; and that her fibromyalgia, obesity, and depression underlie her chronic pain syndrome.  Dr. Hall checked that her pain caused pervasive lost in interest in almost all activities, psychomotor agitation or retardation, decreased energy, and difficulty concentrating or thinking.  Dr. Hall responded that marked restrictions in Young-Schonyers's activities of daily living and marked difficulties in maintaining social functioning were "present" and commented that Young-Schonyers's "[p]ain complaints [were] highly dependent on mood." (Tr. 1320-21.)

The ALJ indicated that the opinion of a treating physician is traditionally given great deference and weight; however, in this case the ALJ found that Dr. Hall's opinions were entitled to little weight.  In support of this finding, the ALJ stated the following:

> Dr. Hall opined that she has significant to considerable impairment in all domains of functioning.  In addition, he stated that she has a marked degree of limitation in social functioning.  However, if the claimant was as bad as Dr. Hall opined, then she would be hospitalized or meet the listings.  Dr. Hall's opinion is inconsistent with the evidence and based heavily upon the claimant's self-reports.  The treatment does not increase in aggressiveness, frequency and/or length of time to justify this level of functioning.  If condition was as bad as testimony and if Dr. Hall had believed her, then she should have been referred for more intensive treatment or prescription adjustments or even hospitalization, none of which were recommended or suggested



> in the medical evidence.  Finally, Dr. Hall's contact with the claimant is limited in duration and frequency of time in office, as he was limited to dispensing pills and recording statements of the claimant.

(Tr. 29) (citations omitted).  Young-Schonyers argues that the ALJ impermissibly substituted his own opinion about treatment for the opinion of her treating physician and failed to consider all of the evidence.  Young-Schonyers also appears to argue that the ALJ erred in discounting Dr. Hall's opinion because his contact with Young-Schonyers was limited in duration and frequency of time by pointing to the number of Young-Schonyers's visits to Palmetto Health Richland Family Center prior to the issuance of Dr. Hall's opinions.  Young-Schonyers appears to concede that many of the records from Dr. Hall's office indicate that she was seen and treated by sources other than Dr. Hall; however, she argues that it is reasonable to assume that Dr. Hall was familiar with Young-Schonyers and her records, rendering the ALJ's finding unsupported.  Young-Schonyers also generally argues that her long treatment and examining history, which includes repeated complaints of pain, should further support Dr. Hall's opinions.  Finally, Young-Schonyers argues that in light of this evidence, the opinions from non-treating physicians should not have been given more weight than Dr. Hall's opinions.

Upon review of the ALJ's decision and the record, the court concludes that the ALJ appears to have applied the relevant factors in evaluating Dr. Hall's opinions and finds that Young-Schonyers has failed to demonstrate that his decision to afford little weight to Dr. Hall's opinions is unsupported by substantial evidence.  See 20 C.F.R. §§ 404.1527(c), 416.927(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted).  Similarly, to the extent that Young-Schonyers alleges that the ALJ impermissibly interpreted medical evidence in order to discount the opinions



of Dr. Hall, the court disagrees. It is clear from the ALJ's decision that the ALJ, as part of his duties in weighing the evidence, properly relied on medical evidence in making his residual functional capacity determination and resolving conflicts of evidence. Where the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). In this case, the ALJ noted that Young-Schonyers had not received mental health treatment, and Dr. Hall's medical records do not reflect any mental limitations following his examinations of Young-Schonyers. Moreover, with regard to Dr. Hall's contact with Young-Schonyers, whether the physician has examined the claimant and his treatment relationship with the claimant are relevant factors to consider in weighing an opinion.[4] See 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ also discounted Dr. Hall's opinion based on his determination that Dr. Hall relied on Young-Schonyers's subjective reports of symptoms and limitations, which the ALJ determined were not credible. "An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations." Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001). Although Young-Schonyers separately argues that the ALJ erred in evaluating her credibility, for the reasons discussed below, the court disagrees. See infra, Section C.

---

[4] As pointed out by the defendant, the record appears to reflect that Dr. Hall examined Young-Schonyers approximately six times in one year and rendered his opinion nine months after his last examination. (See Def.'s Br. at 10, ECF No. 21 at 10) (citing Tr. 659-60, 682, 792, 898-99, 924, 940-41).

The ALJ's decision is further supported by the opinions of state agency reviewers, Dr. Boland and Dr. Frederic Ransom. Importantly, opinions from non-examining physicians, which in this case are opinions from state agency reviewers, can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent with the record as a whole. See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); see also 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence"). In evaluating the opinions from the state agency reviewers, the ALJ observed that although the state agency reviewers "were not treating physicians, they are experts in record review and the disability process, and they are a source shown to be familiar with SSA and occupational standards, and not contradicted by any treating source shown to be familiar with SSA and occupational standards." (Tr. 30.) The ALJ found that the opinions of Drs. Boland and Ransom were "based on objective medical evidence of record, consistent with the medical evidence of record overall, and consistent with the credible portion of activities of daily living evidence." (Id.) Therefore, the court finds that Young-Schonyers's general assertion that the ALJ erred in giving greater weight to these opinions over Dr. Hall's opinions is insufficient to demonstrate that this portion of the ALJ's decision is unsupported by substantial evidence or controlled by an error of law.

For all of these reasons, the court finds that Young-Schonyers has not shown that the ALJ's decision with regard to Dr. Hall's opinions was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**C.     Credibility**

Finally, Young-Schonyers argues that the ALJ erred in evaluating her subjective complaints. In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[5] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the

---

[5] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

At the hearing, Young-Schonyers testified that standing, due to her back pain, was the biggest problem that prevented her from working. Some of the other limitations that Young-Schonyers testified to included: an inability to raise her right arm over her head, difficulties lifting and gripping items, an inability to drive due to her medications, difficulties in bending, and an inability to get in and out of a bathtub because of pain in her back and legs. Young-Schonyers stated that she had memory issues and migraines.

The ALJ found that Young-Schonyers's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not credible. In support of this finding, the ALJ first explained that the objective medical evidence of record failed to support Young-Schonyers's allegations, discussing her x-rays; MRIs; EMG study; CT scan; and lower extremity venous duplex study, as well as medical findings of grossly intact and normal cranial nerves and normal sensation,



gait, and station. (Tr. 27.) The ALJ also discussed Young-Schonyers's treatment for her impairments and found that her level of treatment during the relevant period was inconsistent with her allegations of physical and mental disability. (Tr. 27-28.) Finally, the ALJ considered Young-Schonyers's descriptions of limited daily activities. The ALJ found that

> two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

(Tr. 29.) The ALJ also found that Young-Schonyers's activities since her alleged onset date were consistent with her residual functional capacity as determined.

Young-Schonyers's first allegation of error appears to incorrectly assert that the ALJ focused his credibility assessment almost exclusively on Young-Schonyers's daily activities. Young-Schonyers also appears to argue that the ALJ inaccurately summarized her activities of daily living, citing to evidence of more limited activities and arguing that the ability to engage in some activities of daily living at her own pace does not constitute evidence that she could engage in work full time. Contrary to Young-Schonyers's assertion, the ALJ also found that Young-Schonyers's allegations were inconsistent with the objective medical evidence as well as her level of treatment, and the ALJ provided specific examples of these inconsistencies. Therefore, her activities were one of several reasons offered by the ALJ to discount her credibility. Moreover, upon review of the record, the court finds that Young-Schonyers has failed to demonstrate that the ALJ's finding that her activities of daily living were inconsistent with her subjective complaints was unsupported by substantial evidence. The court observes that the ALJ's summary of Young-Schonyers's activities addresses the period since the alleged onset date and appears consistent with the activities listed in Dr.



Phillips's consultative examination report.  See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).  Moreover, even setting aside the ALJ's conclusion with regard to Young-Schonyers's daily activities, the court nonetheless finds that the ALJ's credibility analysis is comfortably within the bounds of substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the court finds that Young-Schonyers has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
November 3, 2014                                                      Paige J. Gossett
Columbia, South Carolina                                          UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).