IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Katrina Young-Schonyers, ) | Civil Action No. 0:13-cv-02951-JMC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Katrina Young-Schonyers ("Plaintiff") filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (ECF No. 1.)

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Paige J. Gossett, issued in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a) D.S.C. (ECF No. 23.) On November 3, 2014, the Magistrate Judge recommended affirming the Commissioner's final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Id. at 17.) Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation, which objections are currently before the court. (ECF No. 28.) For the reasons set forth below, the court **ACCEPTS t**he Magistrate Judge's Report and Recommendation and **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for DIB and SSI.

**I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The relevant factual and procedural background of this matter is discussed in the Report and Recommendation. (See ECF No. 23.) The court concludes, upon its own careful review of

1

the record, that the Magistrate Judge's factual and procedural summation is accurate and incorporates it by reference. The court will only reference herein facts pertinent to the analysis of Plaintiff's claims.

Plaintiff was born on February 19, 1965, and is presently fifty (50) years old. (ECF No. 11-5 at 2.) She filed applications for DIB and SSI on March 16, 2010, alleging disability since January 10, 2008, due to back, leg, and arm injuries, depression, and anxiety. (Id. at 2, 6; see also ECF No. 11-6 at 6.) Plaintiff's applications were denied initially on July 23, 2010, and upon reconsideration on March 1, 2011. (ECF No. 11-4 at 2, 12.) As a result, Plaintiff requested an administrative hearing on May 9, 2011. (Id. at 21, 23.) On May 29, 2012, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"), Arthur Conover, who found on July 11, 2012, that Plaintiff was not under a disability as defined by the Social Security Act ("SSA") because she had the residual functional capacity to make "a successful adjustment to other work that exists in significant numbers in the national economy." (ECF No. 11-2 at 33, 42.) Thereafter, the Appeals Council denied Plaintiff's request for review on September 30, 2013, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Id. at 2.)

Subsequently, on October 29, 2013, Plaintiff commenced an action in the United States District Court for the District of South Carolina pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim for DIB and SSI. (ECF No. 1.) On November 3, 2014, the Magistrate Judge issued her recommendation that the Commissioner's final decision denying Plaintiff's claim for DIB and SSI be affirmed. (ECF No. 23.) Plaintiff filed timely Objections to the Magistrate Judge's Report on December 1, 2014. (ECF No. 28.) The Commissioner filed a Response to Plaintiff's Objections to the Report and Recommendation of the United States Magistrate Judge on

December 18, 2014.  (ECF No. 29.)

## II.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The magistrate judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.     Judicial Review of the Commissioner

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance."  Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is supported by substantial evidence.  See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.

1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." Id. "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." Vitek, 438 F.2d at 1157–58.

### III.    ANALYSIS

A.    The Magistrate Judge's Review

Upon her review of the ALJ's decision, the Magistrate Judge concluded that the ALJ properly evaluated and sufficiently supported his assessment of Plaintiff's residual functional capacity ("RFC"). (ECF No. 23 at 5 (referencing SSR 96-8p, 1996 WL 374184 (July 2, 1996)).) In support of her conclusion, the Magistrate Judge observed that the ALJ discussed the relevant medical evidence and sufficiently accounted for Plaintiff's physical and mental limitations in assessing her RFC. (Id.) The Magistrate Judge further observed that the ALJ "resolved the inconsistencies and ambiguities in the evidence" and supported his assessment of Plaintiff's RFC with opinions from state agency reviewer, Dr. Janet Boland ("Dr. Boland"). (Id. at 7–8.) As a result, the Magistrate Judge recommended the court find that the ALJ complied with the requirements of SSR 96-8p in his assessment of Plaintiff's RFC. (ECF No. 23 at 8.)

In evaluating the ALJ's decision to assign little weight to the opinion of Plaintiff's primary care physician (see ECF No. 11-2 at 30), Dr. Jeffrey Hall ("Dr. Hall"), the Magistrate Judge opined that "the ALJ appears to have applied the relevant factors in evaluating Dr. Hall's opinions and finds that . . . [Plaintiff] has failed to demonstrate that his decision to afford little weight to Dr. Hall's opinions is unsupported by substantial evidence." (ECF No. 23 at 11.) In

4

this regard, the Magistrate Judge observed that the ALJ (1) "properly relied on medical evidence in making his residual functional capacity determination and resolving conflicts of evidence"; (2) discounted Dr. Hall's opinion based on his determination that Dr. Hall relied on . . . [Plaintiff]'s subjective reports of symptoms and limitations, which the ALJ determined were not credible"; and (3) found that the opinions of state agency reviewers, Dr. Boland and Dr. Frederic Ransom were "'based on objective medical evidence of record, consistent with the medical evidence of record overall, and consistent with the credible portion of activities of daily living evidence.'" (Id. at 12–13 (quoting, e.g., ECF 11-2 at 31).) Based on the foregoing, the Magistrate Judge recommended that the court find that the ALJ's decision regarding the weight accorded to Dr. Hall's opinions was supported by substantial evidence. (Id. at 14.)

Finally, the Magistrate Judge evaluated whether the ALJ properly assessed Plaintiff's subjective complaints of pain and symptoms. Upon her review, the Magistrate Judge concluded that as part of the SSR 96-7p credibility analysis, the ALJ did consider Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms, but the ALJ found Plaintiff's statements not credible when compared with the rest of the relevant objective medical evidence and the level of her treatment. (Id. at 15–16.) The Magistrate Judge further concluded that the ALJ's credibility assessment considered Plaintiff's daily activities as well as other factors and subjective evidence supported "the ALJ's finding that [Plaintiff's] activities of daily living were inconsistent with her subjective complaints." (Id. at 16.) Accordingly, the Magistrate Judge recommended that the court find that substantial evidence supported the ALJ's findings regarding Plaintiff's credibility. (Id. at 17.)

B.     Plaintiff's Objections and the Commissioner's Response

Objections to the Magistrate Judge's Report and Recommendation must be specific. See

5

U.S. v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984) (failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge); see also Camby, 718 F.2d at 199 (in the absence of specific objections to the Report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation).

Plaintiff first objects to the Magistrate Judge's endorsement of the ALJ's findings as to how Plaintiff's migraines and lumbar spine issues affected her RFC. (ECF No. 28 at 2–3.) Plaintiff further objects to the Magistrate Judge's finding that the ALJ properly relied on the state agency assessment of Plaintiff's mental impairment when portions of that assessment "rated Plaintiff's mental abilities as interfering with her abilities to focus at work or be consistent in her performance and attendance." (Id. at 3.) As a result, Plaintiff argues that the ALJ's explanation of her RFC "is insufficient and her case should be remanded for further administrative proceedings." (Id. at 4.)

Plaintiff next objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's assessment of weight accorded the opinions of Plaintiff's treating physician, Dr. Hall. (Id. at 4.) In this regard, Plaintiff argues that it was erroneous for the ALJ to state that "Dr. Hall's opinion was inconsistent with the evidence" when the ALJ (1) failed to consider or evaluate Dr. Phillips's[1] opinion that coincides with Dr. Hall's opinion regarding [Plaintiff's] mental limitations, (2) "omitted any reference to the medical evidence that was in support of Dr. Hall's opinion," (3) failed "to explain how he determined that Dr. Hall's opinion relied on subjective reports," and (4) "determined that Dr. Hall's limited contact with the Plaintiff was a

---

[1] Robert Phillips, Ph.D., performed a consultative psychological examination of Plaintiff in February 2011. (ECF No. 12-1 at 27–30.) The ALJ reviewed Dr. Phillips's report and observed that his rating of Plaintiff ("Axis V 57") indicated only moderate symptoms or moderate difficulty in social, occupational, or school functioning. (ECF No. 11-2 at 29.)

6

proper reason to grant less weight to the opinion" when the ALJ "granted more weight to opinions of doctors that never even saw the Plaintiff." (Id. at 4–5.)

Plaintiff's third objection asserts that the Magistrate Judge expressly defended the ALJ's insufficient credibility analysis that focused exclusively on Plaintiff's daily activities. (Id. at 5.) Plaintiff further asserts that the Magistrate Judge ignored her arguments pointing out the ALJ's failure to consider (1) "a significant portion of the submitted evidence" and (2) Dr. Phillip's opinion stating "most of the activities she does are limited by her pain" and "her symptoms interfere with her general ability to focus on her work and they make it hard for her to react normally to work or social events." (Id. at 6 (referencing ECF No. 12-1 at 29).) More specifically, as to the former (1), Plaintiff argues that the ALJ's determinations regarding her RFC and credibility were based on selective readings of the evidence instead of viewing the evidence as a whole, "taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision," as the ALJ was required to do in his decision. (Id. at 6–7.) As to the latter (2), Plaintiff argues that the Magistrate Judge erroneously concluded that "the ALJ's summary of activities is consistent with the activities listed in Dr. Phillip's consultative examination report." (Id. at 6 (referencing ECF No. 23 at 16-17).) Based on the foregoing, Plaintiff "submits that her case requires a remand for further administrative proceedings." (Id. at 7–8.)

In response to Plaintiff's objections, the Commissioner asserts that Plaintiff's arguments are unpersuasive and prays that the court adopt the Report and Recommendation in its entirety and affirm the Commissioner's final decision that Plaintiff was not disabled within the meaning of the SSA. (ECF No. 29 at 2, 4.)

C.   The Court's Ruling

The court has reviewed Plaintiff's objections to the Magistrate Judge's Report and Recommendation and rules on each issue in turn below.

   *1.  Whether the ALJ Properly Assessed Plaintiff's RFC*[2]

Plaintiff contends that she did not receive proper consideration of the impact of migraines and lumbar spine issues on her RFC.

Pursuant to SSR 96-8p, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id. at 1996 WL 374184, at *3.  "At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."  Id.  "At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do." Id. "The RFC assessment must be based on all of the relevant evidence in the case record, such as: Medical history, Medical signs and laboratory findings, The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), Reports of daily activities, Lay evidence, Recorded observations, Medical source statements, Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, Evidence from attempts to work, Need for a structured living environment, and Work evaluations, if available." Id. at *5.

---

[2] The ALJ defined an individual's RFC "is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments."  (ECF No. 11-2 at 22.)

In his decision, the ALJ specifically addressed Plaintiff's migraines and lumbar spine issues:

> Although migraine headaches do not have a specific listing, consideration has been given to the Neurologic impairments listings in section 11.00. The listings for 11.01 require significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station or significant interference with speech, vision, mental function, or daily activities. However, the claimant's migraine headaches do not meet or equal the listing presented above.
>
> . . .
>
> Although the record shows degenerative changes and disc bulges, Listing 1.04 is not met because there [is] no compromise of a nerve root (including the cauda equine) or the spinal cord. There is no spinal cord compression, no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss. Further, she has no spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication. Therefore, the mere presence of degenerative changes and disc bulges are not sufficient to meet or equal listing 1.04.

(ECF No. 11-2 at 24.)

> Turning to the medical evidence, the claimant alleges disability due to both physical and mental impairments; however, the objective medical evidence fails to support the claimant's allegations. In late 2007, she complained of headaches, but her cranial nerves were grossly intact (Ex. 1F/3). Her physician diagnoses her with tension headaches (id.). . . . An x-ray of her lumbar spine in February of 2008, revealed disc bulging with moderate stenosis at L4-5 with "tiny" central protrusion and associated annular tear at L3-4 with mild canal stenosis (Ex. 3F/8). Shortly thereafter, in March, April, and May of 2008, she underwent three separate epidural steroid injections at L5-L5 and L3-4 (Ex. 3F).
>
> Throughout the record, her cranial nerves and sensation were normal (Ex. 9F and 26F).
>
> . . .
>
> An electromyography (EMG) study in June of 2010 showed no signs of lumbar radiculopathy (Ex. 14F). A CT of her head showed no acute intracranial process (Ex. 16F/13 and 18F/5-12). She reported to the ER complaining of headaches in late 2010 (Ex. 18F/2). Thus, the physicians performed a lumbar puncture that showed no bacteria (id. at 8).
>
> . . .
>
> Her course of treatment was conservative. Although she received epidural steroid

9

> injections for pain, she never underwent invasive surgery on her back . . . .

(Id. at 28.) Based in part on the foregoing, the ALJ made the following assessment of Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work[3] as defined in 20 CFR 404.1567(b) and 416.967(b) except no operation of motorized equipment and only occasional pushing or pulling with her left leg.[4] She can occasionally stoop, crouch, and climb ramps and stairs; however, she can never kneel, crawl, or climb ladders, ropes, or scaffolds. She can occasionally reach overhead with her right (dominate) arm; however, she must avoid work around heights and dangerous machinery. She is able to perform routine, simple work that permits her to avoid large crowds in the workplace. She should not have to serve the public as customers.

(ECF No. 11-2 at 26.) The ALJ further offered the following explanation for his findings regarding Plaintiff's RFC:

> Finally, the undersigned relied heavily upon the medical evidence of record, the claimant's activities of daily living, the claimant's testimony, and SSR 96-8p to develop the claimant's residual functional capacity presented herein.
>
> . . .
>
> In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of a disabling impairment. The findings of the State Agency medical consultants are internally consistent and consistent with the evidence as a whole. The credibility of the claimant's allegations is

---

[3] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). "Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs." Id. "A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances)." Id. "Relatively few unskilled light jobs are performed in a seated position." Id.

[4] The ALJ further observed that "[i]f the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.20." (ECF No. 11-2 at 32.) "However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (Id.)

10

> weakened by inconsistencies between his allegations and the medical evidence. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. The claimant does experience some limitations but only to the extent described in the residual functional capacity above.

(ECF No. 11-2 at 31.)

Upon consideration of the above-referenced portions of the ALJ's decision, the court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ adequately explained his RFC findings and cited to the evidence of record forming the basis for his determination that Plaintiff's RFC allowed her to perform "other work that exists in significant numbers in the national economy." (Id. at 33.) Accordingly, the court overrules Plaintiff's objection to the Magistrate Judge's Report and Recommendation regarding whether substantial evidence supported the ALJ's assessment of Plaintiff's RFC.

   *2. Whether Substantial Evidence Supports the Weight Accorded to the Opinions of Plaintiff's Primary Care Physician*

Plaintiff asserts that the opinion of Dr. Hall, her primary care physician, was not accorded the proper weight by the ALJ.

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." SSR 96–2p, 1996 WL 374188, at *1 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(c)(2)[5], 416.927(c)(2)[6]. 20 C.F.R. §§ 404.1527(c) and 416.927(c) provide that, if a

---

[5] As it relates to DIB, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

[6] As it relates to SSI, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and

treating source's opinion is not accorded controlling weight, the ALJ is required to consider "all of the following factors in deciding the weight we give to any medical opinion":  (1) examining relationship ("[g]enerally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you"); (2) treatment relationship, including length of treatment relationship, frequency of examination, and the nature and extent of the treatment relationship; (3) supportability ("[t]he more a medical source presents relevant evidence to support an opinion… the more weight we will give that opinion"); (4) consistency; (5) specialization; and (6) other factors.  Id.  "However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that 'an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision."  Kirby v. Colvin, No. 4:13-cv-3138-DCN, 2015 WL 1038036, at *3 (D.S.C. Mar. 10, 2015) (quoting Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010)); see 20 C.F.R. § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion).  "A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion."  Id. (quoting Craft v. Apfel, 164 F.3d 624, No. 97-2551, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In his decision, the ALJ gave the following explanation for his decision to accord little weight to the opinions of Dr. Hall:

---

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  20 C.F.R. § 416.927(c)(2).

> As for the opinion evidence, the undersigned traditionally gives great deference and weight to the opinion of the claimant's treating physician (SSR 96-2p). In this case, the claimant's primary care physician submitted a mental status questionnaire (EX. 36F). Dr. Hall opined that she has significant to considerable impairment in all domains of functioning (id.). However, if the claimant was as bad as Dr. Hall opined, then she would be hospitalized or meet the listings. Dr. Hall's opinion is inconsistent with the evidence and based heavily upon the claimant's self-reports. The treatment does not increase in aggressiveness, frequency and/or length of time to justify this level of functioning. If condition was as bad as testimony and if Dr. Hall had believed her, then she should have been referred for more intensive treatment or prescription adjustments or even hospitalization, none of which were recommended or suggested in the medical evidence. Finally, Dr. Hall's contact with the claimant is limited in duration and frequency of time in office, as he was limited to dispensing pills and recording statements of the claimant. Therefore, the undersigned gave opinion of Dr. Hall little weight.

(ECF No. 11-2 at 30.) The ALJ also gave a full explanation for the weight accorded to other medical sources:

> Additionally, the file contains an opinion from her physical therapist in 2009 (Ex. 30F). Physical therapists are non-accepted medical sources and the opinion has not been updated to reflect her current condition. Therefore, the undersigned gave the opinion of Mr. Pacano little weight. In accordance with Social Security Ruling 96-6p, the undersigned considered the administrative findings of fact made by State Agency medical physicians and other consultants regarding claimants mental and physical capacity to perform work-related functions. The undersigned weighed the statements from non-examining expert sources. Based on the evidence, the undersigned concludes that the State Agency medical consultant, Frederic Ransom, M.D. was fully consistent with the medical evidence, whereas the opinion of James Weston, M.D. was not fully consistent with the medical evidence (Ex. 13F and 21F). Dr. Ransom opined that she retained the capacity to perform a reduced range of light work (Ex. 13F). Dr. Weston opined that she could perform a wide range of medium work (Ex. 21F). Thus, the undersigned gave the opinion of Dr. Ransom great weight and the opinion of Dr. Weston little weight to the extent they are consistent with residual functional capacity indicated herein.
>
> The State Agency psychological consultant, Lisa Klohn, Ph.D. was not fully consistent with the medical evidence, whereas the opinion of Janet Boland, Ph.D. was fully consistent with the medical evidence (Ex. 12F and 23F–24F). Dr. Klohn opined that her mental impairments were non-severe (Ex. 12F). Dr. Boland opined that her mental impairments resulted in moderate limitations in her ability to conduct social functioning and maintain concentration, persistence, or pace (Ex. 23F). Thus, the undersigned gave the opinion of Dr. Boland great weight and the opinion of Dr. Klohn little weight to the extent they are consistent

with residual functional capacity indicated herein.

(ECF No. 11-2 at 30–31.)

Upon consideration of the above-referenced portions of the ALJ's decision, the court finds that the ALJ's findings as to Dr. Hall sufficiently meet the requirements of SSR 96–2p, 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) and are supported by substantial evidence. The ALJ was not required to give Dr. Hall's opinion as Plaintiff's treating physician controlling weight. In this case, the ALJ discussed in detail the medical evidence and testimony presented and provided explicit reasons for not accepting Dr. Hall's opinions. Accordingly, the court overrules Plaintiff's objection to the Magistrate Judge's Report and Recommendation that substantial evidence did not support the ALJ's finding as to the weight accorded to Plaintiff's primary care physician.

*3. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Credibility*

Plaintiff asserts that her credibility was not properly evaluated by the ALJ.

In his credibility analysis, the ALJ considered Plaintiff's administrative hearing testimony as summarized below:

> In activities of daily living, . . . she admitted that she is able to attend to her personal care needs, watch TV and movies, prepare and cook simple meals, clean the house, do the laundry, do the dishes, and drive a car. She admitted that she is able to go shopping in stores, speaks with friends and family on a consistent basis, attend doctor's appointments, and use public transportation. In addition, she stated that she is able to walk to the bus stop by herself. She stated that she is able to follow spoken and written instructions, can handle stress and changes in routine, and gets along with authority figures.
> . . .
> She has alleged that she suffers from back injuries, leg injuries, arms injuries, migraine headaches, depression, and anxiety. Further, she alleged that the nerve damages in her legs causes numbness in her right leg. Moreover, she stated that she has constant pain in her shoulder and lower back. She also alleged that she suffers from panic attacks when she is around others. She has reported problems lifting, squatting, standing, bending, walking, sitting, kneeling, climbing stairs, getting along with others, and completing tasks.

(ECF No. 11-2 at 25, 27.) This testimony in conjunction with his consideration of the medical evidence and the factors set forth in SSR 96–7p, 1996 WL 374186, at *3 (July 2, 1996)[7], led the ALJ to conclude that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; . . . however, the objective medical evidence fails to support the claimant's allegations." (ECF No. 11-2 at 27–28.)

After reviewing the foregoing in the context of Plaintiff's objection, the court is not persuaded that the ALJ failed to properly evaluate Plaintiff's credibility in accordance with SSR 96–7p. Accordingly, the court overrules Plaintiff's objection to the Magistrate Judge's Report and Recommendation that substantial evidence did not support the ALJ's finding as to Plaintiff's credibility.

## IV.     CONCLUSION

Upon careful consideration of the entire record, the court **AFFIRMS** the final decision of the Commissioner denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income. The court **ACCEPTS** the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

---

[7] "20 C.F.R. § 404.1529(c) . . . describe[s] the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 31, 2015
Columbia, South Carolina

16